UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————

John Mastrobuono, and
Jenise Mastrobuono,

              Plaintiffs

v.

Luxury Vehicles of the Hudson Valley,
Inc., d/b/a  BMW of the Hudson Valley and
Roland J. Walton,

              Defendants.

———————————————————

**COMPLAINT
AND
JURY DEMANDED**

## Introduction

[1]    This is a claim for money damages and declaratory relief, brought by Plaintiffs John and Jenise Mastrobuono seeking redress for Defendants' Luxury Vehicles of the Hudson Valley, Inc. DBA BMW of the Hudson Valley ("BMWHV") and Roland J. Watson ("Watson") (collectively, "Defendants") unlawful practices relating to a used automobile transaction, and setting forth Defendants' violations of 49 U.S.C.A. § 32701 et seq. (Motor Vehicle Information and Cost Savings Act) and New York General Business Law (NYGBL) § 349; and in addition, claims for Breach of Express and Implied Warranties under New York Uniform Commercial Code (NY UCC) §§ 2-313 and 2-314; Fraud, and Rescission/Mistake.

## Venue and Jurisdiction

[2]    Jurisdiction is based on 49 U.S.C.A. § 32710(b) and 28 U.S.C. § 1337.

[3]    The Court has authority to issue a declaratory judgment by virtue of 28 U.S.C. § 2201 and § 2202.

[4]    This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

[5]     Venue in this District is proper under 28 U.S.C § 1391 because a substantial part of the events and omissions complained of took place in this District and Defendants maintain offices, transact business, and are otherwise found in this district.

## The Parties

[6]     BMWHV is a domestic corporation, with its principal place of business in Poughkeepsie, New York, and is engaged in the purchase and resale of motor vehicles.

[7]     Defendant, Roland Walton, is the owner/ manager/director/ principal shareholder of BMWHV, whereby he possesses the authority, and exercises the same, to establish, implement or alter the procedures of BMWHV, or cause the foregoing to occur, and has allowed, directed, ratified, or otherwise caused the unlawful acts and practices alleged below to be conducted by employees and/or agents of BMWHV.

[8]     Defendants advertise and sell vehicles via eBay, and sold the subject vehicle, a 2000 323i BMW (the "Vehicle") to Plaintiffs via eBay.

[9]     Defendants were, at all times relevant hereto, "dealers" as defined in 49 U.S.C. § 32702.

[10]     Plaintiffs John and Jenise Mastrobuono (the Mastrobuono's) are individuals who have resided at all relevant times in Broadview Heights, Ohio.

[11]     Plaintiffs have been married to one another at all relevant times.

## FACTS

### Purchase of the Vehicle

[12]     In response to an auction advertisement placed on eBay Motors by BMWHV, the Mastrobuono's placed a bid to purchase the Vehicle.

[13]    On February 14, 2010, the Mastrobuonos placed the "winning bid" of $5,625.00 (Five thousand six hundred twenty-five dollars).

[14]    Prior to placing a bid, however, the Mastrobuonos made several phone calls to BMWHV to ask specific questions about the Vehicle.

[15]    Jenise Mastrobuono called on or about February 14, 2010 and spoke to the general manager, Marcus Mancuso. She specifically asked Mr. Mancuso about the overall condition of the Vehicle's body. Mr. Mancuso said that the exterior of the vehicle was in "immaculate condition" and that there was "no rust whatsoever" on the car.

[16]    Because the eBay auction advertisement included a brief "Carfax history" stating that there was "accident or damage reported" the Mastrobuonos questioned Mr. Mancuso about this specifically. He told them that the "accident or damage" referred to a BMW open recall on the floor pans for this particular make and model.

[17]    Specifically, Mr. Mancuso stated that the entire floor pan, from trunk to the mid section of the car, had to be removed, repaired and rewelded. Mr. Mancuso explained that because of this "open recall" the vehicle had initially not passed the New York state inspection several times. However, he told them that the vehicle had presently passed inspection.

[18]    Mr. Mancuso offered to send the Mastrobuonos a Carfax report for the vehicle as well as the service reports. He told them that the car had originally been sold by BMWHV and that the dealership performed all of the service on the car.

[19]    Mr. Mancuso sent the couple a Carfax report showing a black 2000 BMW 323i in excellent condition and no record of accident history other than a collision with a deer which had been repaired. After receiving the Carfax report, and being assured by Mr. Mancuso that they would provide a copy of the full service history for the car, the couple decided to make a bid on eBay.

Following notification of their "winning" bid, they called Mr. Mancuso the following day to discuss payment and shipment of the car to their residence in Cleveland, Ohio.

[20]    Mr. Mastrobuono informed Mr. Mancuso that he planned to use the vehicle not only for personal use, but also as a promotional vehicle for the Mastrobuono's BMX bicycle frame manufacturing business.

[21]    Specifically, Mr. Mastrobuono informed Mr. Mancuso that he planned to display his company logo on the vehicle and drive it to important business opportunities such as BMX races to portray a positive and professional image to potential customers and enhance their prospects of new sales. where potential customers would see the vehicle, be favorably inclined toward the company and its products, and more likely to purchase bicycle frames from the Mastrobuono's company.

[22]    After discussing several payment options (certified check, credit card, etc.) it was verbally agreed that the Mastrobuonos would wire the $6,100 ($5,625 purchase price plus $475 in shipping expenses) to a JP Morgan Chase account held by BMWHV.

[23]    Prior to depositing the $6,100, the Mastrobuono's did not sign or execute any contract or documents with the selling dealership. In fact, at no time before shipment of the vehicle to Ohio did BMWHV present the Mastrobuonos with any documents, including a contract or sales invoice, regarding the sale of the 2000 BMW 323i.

### Arrival of the Vehicle

[24]    On or about February 19, 2010 the Mastrobuonos received a Fed Ex containing copies of several "sales documents" for the vehicle, including a "Retail Certificate of Sale," an "Odometer Disclosure Statement" and a "Purchase Order" for the purchase of the vehicle. The Mastrobuonos opened the envelope and read the documents headings, but did not thoroughly review the contents at that time.

[25]    The next day, the BMW was delivered to their home in Ohio.

4

[26]    The delivery process was exceedingly quick – as soon as the driver had unloaded the vehicle, he left.

[27]    Seeing that the exterior of the vehicle was not in excellent condition, and had dents and rust, the Mastrobuonos immediately took it for a test drive.

[28]    After driving less than twenty miles, they realized that the vehicle's odometer was not functioning. The odometer was stuck at 124,439.[1] In addition to the non functioning odometer, the Mastrobuonos noted the following problems during this test drive, causing them great concern:

      a.     The car arrived with the ABS (Anti-Lock Braking System), brake, and DSC (Dynamic Stability Control System) dashboard lights on;

      b.     The speedometer, hazard lights, horn, and on board dash ("OBD") computer were not functioning.

      c.     The rear windows were partly open and could not be closed or opened.

      d.     The interior of the car had significant water damage.

      e.     There was a smell of burning oil throughout the vehicle (later determined to be caused by the valve cover gasket leaking oil onto the exhaust manifold).

      f.     The brakes were not functioning correctly.

      g.     There was a crack in the front windshield.

[29]    Due to the numerous apparent malfunctions and safety concerns, the Mastrobuonos brought the vehicle to a local certified BMW repair center, Larchmere Imports ("Larchmere"), the next morning.

---

[1] As discussed further *infra*, there are several documented discrepancies regarding the odometer: (1) the eBay auction description listed the vehicle mileage at 124, 452; (2) the Retail Certificate of Sale lists the odometer reading at 124, 439; (3) the Title to the vehicle lists the odometer reading at 124, 421; and (4) the Carfax Report lists the odometer reading at 125, 563.

[30]   Once at Larchmere, the vehicle was thoroughly inspected. The inspection revealed the following problems:

a.   The connector wires had been cut in the OBD computer (which allows the diagnosis machine to communicate with the vehicle) therefore preventing the mechanic from properly diagnosing the numerous apparent electrical and computer related problems as well as diagnosing any additional problems.

b.   The cover for the water proof/air tight box which contains the on board computer was loose and improperly fastened.

c.   The valve cover gasket was leaking oil onto the exhaust manifold causing the smell of burning oil as soon as the car was turned on.

d.   The vehicle's front springs were improperly installed causing the factory struts to fail and needing replacement as well as the strut towers being bent upwards and "mushroomed," also needing replacement.

e.   The front drive shaft flex disc was completely worn and needed replacement.

f.   The rear differential was leaking oil from the cover and shaft seals.

g.    The rear windows were partially open and permanently stuck. The open windows caused water damage to the floor, seats and headliner on both sides.

h.    The front bumper or cowl was cracked and needed replacement.

i.   Both front window regulator cables were frayed and needed replacement.

j.   Both front lower control arm bushings were completely worn and needed replacement.

k.   The vehicle had five significant dents, including a creased dent in the trunk lid.

l.   There was extensive paint damage to the front and rear bumpers.

       m.     The sunroof shade was broken and would cause further damage if used.

       n.      The tires on the vehicle were mounted backwards and needed remounting.

       o.      All four tire rims had "rash"; two tire rims were bent.

[31]    In sum, the Mastrobuonos had purchased a vehicle that was not safe to drive on roadways and that would require extensive mechanical repairs in order to render the vehicle safe and roadable.

[32]    Shocked by the poor condition of the vehicle they had been told was in "immaculate condition" and the numerous other discrepancies between what they had been promised and what they had received, the Mastrobuonos contacted Mr. Mancuso and asked to unwind the transaction, i.e. to return the vehicle and receive their money back.

[33]    Mr. Mancuso told the Mastrobuonos that he would inquire about this with the owner of BMWHV, but failed to get back to the Mastrobuonos and failed to respond to several follow up calls they made.

[34]    Told by Larchmere that the car had not passed inspection in New York and would not pass in Ohio without significant repairs, the Mastrobuonos agreed to have Larchmere make approximately $2,000 worth of repairs in order to have functioning brakes and to make other limited repairs in order to allow them to get the vehicle back to their residence safely.

### Initial Repairs of the Vehicle

[35]    The following repairs were performed on the vehicle by Larchmere, between approximately February 20, 2010 and March 9, 2010:

       a.      Repaired damaged wires and terminals and installed new diagnostic plug under hood;

       b.      Replaced left rear wheel speed sensor;

      c.     Replaced rear brake calipers; cleaned and lubricated pistons and slides on the front calipers;

      d.     Flushed entire brake system, including master cylinder, calipers, and wheel cylinders until clean.

[36]    This initial repair totaled $1,878.51 in parts and labor. Although the BMW was in condition to allow them to drive home, it was still unfit to pass Ohio inspection. The dealership recommended that the vehicle stay off the roads until further repairs were performed. Specifically, Larchmere informed Plaintiffs that the vehicle still required repairs totaling over $6,000.

[37]    The couple drove the vehicle home where it has remained parked in their driveway.

[38]    Because the repairs performed by Larchmere included replacing the rear wheel sensor, when the Mastrobuonos drove the car [15 miles] to their home, the odometer jumped over 4,000 miles.

### Forged Signature of John Mastrobuono

[39]    After the Mastrobuonos brought the vehicle to Larchmere and learned of the extensive damage, they decided to carefully read through the documents sent to them by BMW Hudson Valley.

[40]    In all three documents received on February 19, 2010, the "Retail Certificate of Sale," the "Odometer Disclosure Statement" and the "Purchase Order," a signature line was set forth below the printed name line of "John M. Mastrobuono."

[41]    In all three documents, Mr. Mastrobuono's signature had been forged. Mr. Mastrobuono never signed these documents, nor had he ever seen them prior to February 19, 2010.

[42]    Further, Mr. Mastrobuono never gave permission to anyone at BMW of the Hudson Valley, including Mr. Mancuso, or to any other person, to sign his name on these or any other documents.

[43]     Subsequently, the Mastrobuonos decided to review again the Carfax sent to them by Mr. Mancuso on February 14, 2010. Upon careful inspection, they discovered that the Carfax sent to them was for a black 2000 BMW 323i (i.e. the same make and model as the automobile they had purchased) but with a different VIN number.   Although they subsequently requested the service history promised by Mr. Mancuso several times, Mr. Mancuso did not return their phone calls.

### Discrepancies between "advertised" condition and "actual" condition

[44]     There are significant discrepancies between the "advertised" condition of the vehicle by BMWHV and the actual condition of the vehicle when delivered on or about February 20, 2010. First, the relevant information posted by BMWHV in the eBay auction advertisement regarding the 2000 BMW 323i read:

VIN # WBAAM3346YKC70939

Title: 2000 BMW 323i SPORT 5-spd Manual

Mileage: 124,452

Location: Poughkeepsie, NY

Warranty: No

Vehicle Title: Clear

Condition: Used

For sale by: Dealer

[45]     Underlying the photo of the car, the dealer's description stated:

This 2000 BMW Sport sedan!![sic] Really nice 3 series, customer bought car from us certified a few years ago, has the 18 inch performance package wheels on it, it's a 5 speed man, moon roof, sport pack, Harmon/kardon sound, don't miss this one! Happy Bidding!

[46]     Additionally, the vehicle "History Report" set forth on the eBay auction posting represented that: (1) the vehicle had four different owners; (2) the odometer reading on May 27, 2008 read 109,000; (3) no title problems existed; (4) there was no odometer rollback; and (5) *accident or damage reported* (emphasis in original).

[47]     Although the eBay advertisements in the "bullet point description" that the car did not come with a warranty, the bill of sale contained the following statement:

> If this motor vehicle is classified as a used motor vehicle Luxury Vehicles of The Hudson Valley, Inc. certifies that the entire vehicle is in condition and repair to render under normal use, satisfactory and adequate service upon the public highway at the time of delivery.

(hereinafter, the "Bill of Sale Certification").

[48]     The Purchase Contract also contains a certification and guarantee:

> IMPORTANT NOTICE TO USED CAR BUYER
>
> a)  STATE LAW REQUIRES THAT SELLERS OF SECOND HAND CARS CERTIFY IN WRITING TO THE BUYER THAT EACH CAR IS IN SAFE CONDITION AT THE TIME OF SALE
> b)  THIS CERTIFICATION IS A GUARANTEE THAT THE CAR IS IN SAFE CONDITION AT THE TIME OF SALE
> c)  YOU HAVE THE RIGHT TO REQUEST THE DEALER TO REPAIR OR TO PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION

(hereinafter, the "Purchase Contract Certification")

[49]     The photos posted by BMW Hudson Valley depict a vehicle with no front bumper damages, no discernible crack in the windshield, no denting and no rust, and with the rear windows closed.

[50]     It is evident from the actual condition of the vehicle upon delivery that the car in the advertisement could not possibly be the same car that was shipped to the Mastrobuonos in Ohio. E.g.

the vehicle that was delivered had a severely cracked front bumper, dents, rust, a cracked windshield, and non-functioning rear windows that were "locked" in open position.

## I.      Violations of the Motor Vehicle Information and Cost Savings Act (49 U.S.C.A. 32701 et seq.)

[51]    Plaintiffs hereby aver and reallege the allegations contained in the foregoing paragraphs, as if fully rewritten herein.

[52]    Defendants violated 49 U.S.C.A. § 32703(2), by altering or causing to be altered the odometers of motor vehicles with the intent to change the number of miles indicated thereon. Inasmuch as Defendants knew that the vehicle with the altered lower mileage would bring a higher price than the vehicle with its actual mileage, the alteration alleged herein was performed with an intent to defraud.

[53]    Defendants have violated 49 U.S.C.A. §32705(a)(2), by giving false statements to transferees when making a disclosure required by 49 C.F.R. § 580.5 (odometer disclosure requirements).

[54]    Defendants have violated 49 U.S.C.A. § 32704(a)(2) by allegedly repairing and replacing odometers without attaching the "Notice of Odometer Repair" form to the left door frame of the vehicle as provided by law.

[55]    Defendants have violated 49 U.S.C.A. § 32704(a)(1) by not resetting a serviced odometer to the mileage indicated before the service, or if this could not be done, by not adjusting the odometer to read "zero."

## II.     Violations of New York General Business Law § 349

[56]    Plaintiffs hereby aver and reallege the allegations contained in the foregoing paragraphs, as if fully rewritten herein.

[57]   Defendants represented that the vehicle had numerous characteristics, uses or benefits that it did not have.  Specifically, but without limitation, these misrepresentations included:

    a. the odometer mileage (as it appeared on the odometer display itself) was untrue

    b. the statements regarding the odometer mileage made in the eBay advertisement, the Retail Certificate of Sale, the vehicle Title, and the Carfax Report given to Plaintiffs were untrue

    c. Mr. Mancuso's statement that the vehicle's body was in "immaculate condition" and that the vehicle had "no rust whatsoever" were untrue.

    d. The Carfax supplied to Plaintiffs by Defendants, which Defendants led Plaintiffs to believe was for (and reflected the history of) the vehicle that Plaintiffs were considering purchasing was untrue and, in fact, represented the history of an entirely different and unrelated vehicle with a different VIN number.

    e. Mr. Mancuso's statement that the vehicle had originally been sold by BMWHV and that the dealership performed all of the service on the car was false;

    f. The photograph in the eBay advertisement, which did not reflect the cracked bumper, broken windows and other exterior damage on the vehicle purchased by Plaintiffs and which, upon information and belief, was an image of a different vehicle, was false;

    g. The text of the eBay advertisement, which represented, inter alia, that the vehicle was a "really nice 3 series" was false;

      h.   The Bill of Sale Certification was false;

      i.   The Purchase Contract Certification was false;

      j.   Defendants' statement that the only accident the Vehicle was in was a collision with a deer and that all accident damage was fully repaired was false;

      k.   Defendants' statement that the vehicle had passed NY inspection was false.

[58]    Each of these misrepresentations, individually, and when taken as a whole, constituted a representation made by Defendants that the vehicle was of a particular standard, quality, or grade when it was of another.

[59]    Each of the deceptive acts and practices set forth above, constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law, including common law.

[60]    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

[61]    Defendants' deceptive acts and practices were consumer-orientated, reflected in the fact that many of Defendants' misrepresentations were published in an advertisement on the internet.

[62]    Defendants' conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public, but rather is highly capable of repetition and could be used against any other consumer attempting to buy a used vehicle from Defendant.

[63]    Indeed, on information and belief, Defendants' willfully and knowingly engage in the deceptive tactics set forth herein, in bad faith, on a regular and recurring basis.

[64]    Defendants' conduct and/or statements were materially misleading.

[65]   As a result of these violations of NYGBL §349, Plaintiffs suffered actual damages in an amount to be determined at trial.

[66]   For these reasons, Plaintiffs are entitled to actual damages, three times the actual damages up to $1000, costs and reasonable attorneys fees pursuant to NYGBL § 349(h).

## III.   Breach of Express Warranty (NY UCC § 2-313)

[67]   Plaintiffs hereby aver and reallege the allegations contained in the foregoing paragraphs, as if fully rewritten herein.

[68]   At the time Defendants sold and delivered to Plaintiffs the vehicle, and to induce Plaintiffs to purchase the vehicle, Defendants expressly represented that:

a.   The previous mileage or extent of prior use was 124.452 miles. Such representation was made in the advertisement placed on eBay in February, 2010. A similar mileage representation was reaffirmed when it was incorporated into the contract prepared by the Defendant and certified in the odometer disclosure statement given to the Plaintiffs, both of which stated the mileage as 124,439;

b.   The vehicle had no front bumper damage, no denting, no cracked windshield, and no rust, and that the car had rear windows capable of closing, said representations being made, inter alia, in the photo presented by BMWHV on eBay in February, 2010;

c.   The exterior of the Vehicle was in "immaculate condition" and that there was no rust whatsoever on it, said representations being made, inter alia, by sales manager Mancuso;

    d.      The only accident the Vehicle was in was a collision with a deer and that was repaired;

    e.      The Vehicle had originally been sold by BMWHV and that the dealership performed all of the service on it;

    f.      That the vehicle was "IN SAFE CONDITION AT THE TIME OF SALE" and that Defendants would "PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION" per the Purchase Contract Certification (emphasis in original).

    g.      That the vehicle was "in condition and repair to render under normal use, satisfactory and adequate service upon the public highway at the time of delivery" per the Bill of Sale Certification.

[69]    Such representations were affirmations of fact made by BMWHV to Plaintiffs which relate to the subject Vehicle and became part of the basis of the bargain and therefore constituted an express warranty.

[70]    All of the above representations were false when made.  For example, and without limitation, the Vehicle had been operated for substantially more miles than was indicated at the time of sale; the vehicle in the online photo was not the same vehicle delivered to Plaintiffs; the Vehicle had upon information and belief, numerous undisclosed incidents of damage; the Vehicle when delivered, had numerous dents and rust spots in the exterior; the Vehicle when delivered had a cracked windshield, the vehicle was not in safe condition at the time of sale, the vehicle was not in adequate condition to render adequate and satisfactory use on the public highway at the time of delivery, and the vehicle had a staggering array of mechanical problems on delivery, etc.

[71]    Particularly in light of the fact that Plaintiffs were not able to see the vehicle in person prior to the sale, Plaintiffs justifiably relied on the representations stated above in making their purchase.

[72]    As a result of Defendant(s)' breach of its express warranty as created under NY UCC § 2-313, Plaintiffs has revoked acceptance of the Vehicle and thus is entitled to:

      a.    The return of the monies paid;

      b.    The cost of the repairs made to the Vehicle to make it safe to drive; and

      c.    Other consequential and incidental damages.

[73]    Plaintiffs gave prompt notice to Defendants upon discovery of the misrepresentations as alleged herein, and attempted through Mr. Mancuso, to rescind their acceptance and tender back the Vehicle in exchange for a return of monies paid.

**IV.    Breach of Implied Warranty of Fitness of Purpose and Merchantability (NY UCC § 2-314)**

[74]    Plaintiffs hereby aver and reallege the allegations contained in the foregoing paragraphs, as if fully rewritten herein.

[75]    Defendants are merchants with respect to the Vehicle.

[76]    At the time the Vehicle was sold and delivered to Plaintiffs, the odometer on the Vehicle read 124,439.

[77]    This was not the true odometer reading.

[78]    Defendants had a legal duty, imposed by both federal and state law, to disclose the true odometer mileage of the subject Vehicle to the Plaintiffs prior to its sale, but failed to do so.

[79]    Defendants clearly and unequivocally breached and failed to meet their duty to Plaintiffs with respect to giving a true odometer mileage disclosure.

[80]   Defendants knew or should have known that by failing to give the Plaintiffs a true Odometer Mileage Disclosure Statement, that:

      a.   Plaintiffs would be purchasing a vehicle with less value than Plaintiffs believed the were receiving;

      b.   The Vehicle would not be fit for the purpose it was intended

[81]   By reason of the foregoing, Defendants impliedly warranted under NY UCC § 2-314 that the Vehicle would reasonably operate as a car with the mileage and condition as they represented.

[82]   Defendants also impliedly warranted that the vehicle would be fit and suitable for use as an advertising vehicle for the Mastrobuono's bicycle manufacturing business, and could be driven to important business opportunities, sporting events, etc. and used to attract customers. Because the vehicle was not safely roadable and had severe exterior damage, it was grossly unsuitable for this specific purpose.

[83]   Plaintiffs specifically informed Defendants of how and in what context they intended to use the vehicle.

[84]   Plaintiffs relied on Defendants' skill and judgment and the implied warranty that the vehicle would be reasonably fit for the purpose as represented, and safe to drive.

[85]   As a result of Defendant(s)' breach, Plaintiffs sustained injury and damages including that they paid for a Vehicle which is worth less than what they were led to believe and were compelled to repair the Vehicle to make it safe to drive, such damages having been proximately caused by Defendant's breach.

[86]   The defects in the Vehicle could not be discovered until Plaintiffs' receipt, examination, and use of the Vehicle. Plaintiffs immediately notified Defendant BMW of Hudson

Valley's Mr. Mancuso and offered to return the Vehicle, which Plaintiffs were willing and able to do, but Mr. Mancuso refused to accept the Vehicle.

## V.     Claim for Fraud

[87]     Plaintiffs hereby aver and reallege the allegations contained in the foregoing paragraphs, as if fully rewritten herein.

[88]     BMWHV fraudulently misrepresented to Plaintiffs, that:

    a.     The odometer of the Vehicle was functioning and read lower than the actual mileage on the vehicle at the time of delivery.  This mispresentation was made, inter alia, in the eBay advertisement, the Carfax provided to Plaintiffs, and the Odometer statement.  Upon information and belief, in furtherance of this misrepresentation, Defendants' disabled various mechanical systems on the Vehicle, including the rear wheel caliper (which is the reason that immediately upon having the rear wheel caliper repaired, the mileage on the vehicle jumped by 4,000 miles) or Defendants willfully omitted disclosure to Plaintiffs of their knowledge of this disablement.

    b.     The Vehicle's exterior was in "immaculate condition" and that there was "no rust whatsoever" on the Vehicle.  This misrepresentation was made by BMWHV's agent, Mr. Mancuso, to Jen Mastrobuono on or about February 14, 2010 and was also made via the photograph used in the eBay advertisements, which did not accurately reflect the extensive external damage to the vehicle, including to the front bumper, moon roof, the rear side windows, the rust damage and at least 5 significant dents.

  c.  There was no record of accident history for the Vehicle other than a collision with a deer, which had been repaired. This misrepresentation was made by BMWHV's agent, Mr. Mancuso, inter alia, via the false Carfax (which was actually a Carfax regarding another, unrelated vehicle) that he faxed to Plaintiffs on or about February 14, 2010.

  d.  That Defendants had performed all service on the Vehicle and that Plaintiffs would receive copies of the full service history of the Vehicle. This misrepresentation was made, inter alia, by Mr. Mancuso verbally on or about February 13, 2010, in telephone conversation with Mr. Mancuso, and in the Carfax sent to Plaintiffs by Mr. Mancuso on or about February 14, 2010 was for a Vehicle different than the Vehicle;

  e.  That the Vehicle had passed its New York inspection.

[89]  That the above representations were false when made in that, in fact, at the time of sale to Plaintiffs:

  a.  The odometer of the vehicle was "stuck" and not working;

  b.  The Vehicle had numerous dents and rust spots, non-functioning rear windows, a non-functioning moon roof, a cracked bumper and other external damage when delivered to Plaintiffs;

  a.  The vehicle had extensive mechanical damages and was not "IN SAFE CONDITION AT THE TIME OF SALE" and that Defendants would "PAY IN FULL FOR REPAIRS OF ANY UNSAFE CONDITION IN THE CAR WHICH DOES NOT COMPLY WITH THIS CERTIFICATION" per the Purchase Contract Certification (emphasis in original).

b. The vehicle had extensive mechanical damage and was not "in condition and repair to render under normal use, satisfactory and adequate service upon the public highway at the time of delivery" per the Bill of Sale Certification.

c. The vehicle had not passed its New York inspection.

d. The Carfax sent to Plaintiffs by Mr. Mancuso was for a vehicle different than the Vehicle;

e. The Vehicle as delivered to Plaintiffs was not safe to drive and could not be approved on an inspection by the Ohio State examiners; and

f. Mr. Mancuso of BMWHV failed and refused to send Plaintiffs the full service history for the Vehicle, despite his repeated promises to do so.

[90]   Defendants knew or should have know that such representations were false when made, or the statements were made with such utter disregard and recklessness that knowledge must be inferred.

[91]   Defendants' misrepresentations involved facts which were material to the transaction.

[92]   Defendants made such misrepresentations with the intent to induce Plaintiffs to purchase the Vehicle.

[93]   Had Plaintiffs not been mislead by Defendants, they never would have agreed to purchase a vehicle in the condition as the one delivered and would not have incurred the expenses associated with the purchase.

[94]   Plaintiffs justifiably relied upon such representations to their detriment, and were damaged as a result.

[95]    These damages include, inter alia, the difference between the value of the vehicle as it was represented and the value of the vehicle in the condition in which it was delivered, the cost of repairing the vehicle to render it safe and roadable, and the cost of purchasing a replacement vehicle.

## VI.  Claim for Rescission/Mistake

[96]    Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

[97]    As alleged herein Defendants have committed numerous fraudulent acts and/or made numerous false representations to Plaintiffs.

[98]    Based on Defendants' fraud and misrepresentation, Plaintiffs' execution of the Contract is founded upon material mistake.

[99]    As a result of Defendants' fraud and misrepresentation and Plaintiffs' resulting material mistake, Plaintiffs have sustained actual damages.

[100]   Because Plaintiffs have repeatedly and consistently sought to resolve this dispute starting soon after they purchased the vehicle and immediately after they became aware of the true condition of the vehicle – seeking to unwind the transaction -- there can be no claim of laches.

[101]   Plaintiffs are ready, willing and able to restore the parties to the position each occupied prior to execution of the subject agreement, providing that Defendants return to Plaintiffs all the monies paid by them in connection with this transaction and otherwise restore Plaintiffs to the status quo ante.

[102]   By reason of the foregoing, Plaintiffs are entitled to a judgment rescinding and setting aside the Contract, and directing the return to them of all monies paid in connection with this transaction.

WHEREFORE, Plaintiffs pray that the Court grant them the following relief:

1)      For violations of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C.A. §§ 32701 et seq., judgment ordering Defendants to pay to Plaintiffs an amount equal to the greater of three times Plaintiffs' damages or One Thousand Five Hundred Dollars ($1,500) and reasonable attorneys fees and costs. Plaintiffs have suffered damages in an amount to be determined at trial;

2)      For violations of New York GBL § 349 (Deceptive Acts and Practices Unlawful), judgment for actual damages, three times the actual damages up to $1000, costs and attorneys fees pursuant to NYGBL § 349(h), declaratory judgment that Defendants' acts and practices are deceptive;

3)      For breach of express and implied warranties under New York UCC §§ 2-313 and 2-314, judgment for actual damages, punitive damages, attorneys fees, costs and expenses;

4)      For Defendant's fraudulent conduct, judgment for actual damages in an amount to be determined at trial and further to pay punitive damages in an amount to be determined at trial;

5)      For Rescission/Mistake, judgment rescinding and setting aside of the Contract, and directing the return to Plaintiffs of all monies paid in connection with the transaction and attorneys fees, costs and expenses;

6)      A judgment declaring the practices alleged above to constitute unlawful practices under the authorities cited; and

7)      Such further relief as justice and equity require, together with costs and expenses plus

interest on all unpaid sums from on or about February 14, 2010, and other amounts as determined by

this Court.

## DEMAND FOR A JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial.


Respectfully submitted,


Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
1025 Westchester Avenue, Suite 108
White Plains, NY 10604
Ph:  (914) 946-1981
Fx:  (914) 946-2930